United States District Court
Southern District of Texas

**ENTERED**

March 31, 2022

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| CARL BAUGH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:20-CV-00007 |
| | § | |
| CITY OF PORT LAVACA, TEXAS | § | |
| and individually, COLIN RANGNOW, | § | |
| ERIC SALLES, JUSTIN KLARE, | § | |
| and JOHN AND JANE DOES, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Carl and Melissa Baugh filed this lawsuit against Chief of Police Colin Rangnow, Lieutenant Eric Salles, and Sergeant Justin Klare (the "Officers"), and the City of Port Lavaca, Texas (the "City") (collectively, the "Defendants"), raising claims under 42 U.S.C. § 1983 as well as Texas state law claims. (Dkt. No. 1). The Defendants filed a Motion to Dismiss Based on Lack of Standing and Motion for Final Summary Judgment. (Dkt. No. 29). The Baughs did not respond. For the following reasons, the Court **GRANTS** the Defendants' Motion.

## I.     BACKGROUND

The facts of this case, as described by the Defendants,[1] are as follows. The Baughs' neighbor, Jerry Shelton, hired movers to transport a mobile home onto his property on

---

[1]     When the nonmovant does not file a response to the motion for summary judgment, the court may accept as undisputed the statement of facts in the motion for summary judgment. *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Morgan v. Fed. Express Corp.*, 114 F. Supp. 3d 434, 437 (S.D. Tex. 2015) (collecting cases).

September 28, 2017.  (*Id.* at ¶ 2).  This required the use of a road abutting the Baughs'

property.  The status of the road was the subject of litigation at that time.  (*Id.* at ¶ 2 n.2).

Carl Baugh claimed the road was a private drive that he owned, not a public easement.

(*Id.*).  Because Carl Baugh had previously attempted to prevent access to the road, one of

the movers requested the presence of police officers while they moved the mobile home

onto Shelton's property.  (*Id.* at ¶ 2).  Lieutenant Salles and Officer Arreguin were

dispatched to the scene.  (*Id.*).

When the movers began transporting the mobile home, Carl Baugh expressed his

disapproval.  Carl Baugh started by recording the events on his phone and at times stood

close enough to the movers that he was in the path of the mobile home being transported.

(*Id.* at ¶¶ 3–4).  Lieutenant Salles attempted to escort Carl Baugh out of the mobile home's

path, but Carl Baugh pushed his hands away.  (*Id.* at ¶ 3).  At one point, the movers

removed a survey stake from the ground so it would not be damaged by the mobile home.

(*Id.* at ¶ 4).  This caused Carl Baugh to shout and attempt to replace the stake, again

putting him in the path of the mobile home.  (*Id.*).  Lieutenant Salles attempted to escort

Carl Baugh out of the way once again, but Carl Baugh refused to comply and pushed

Lieutenant Salles.  (*Id.*).

Lieutenant Salles directed Carl Baugh to put his hands behind his back, but Carl

Baugh refused to comply and physically resisted.  (*Id.*).  Because of his continued

resistance, Officer Arreguin and Lieutenant Salles placed Carl Baugh on the ground and

handcuffed him, all while Carl Baugh continued to physically resist.[2]  (*Id.*); (Dkt. No. 30-7).  It appears that Melissa Baugh was a bystander to these events, though it is unclear how, if at all, she was involved.  *See* (Dkt. No. 29 at ¶ 4); (Dkt. No. 1 at ¶ 32).  Chief Rangnow arrived on the scene after Carl Baugh had already been handcuffed.  (Dkt. No. 29 at ¶ 4); (Dkt. No. 30-10 at ¶ 6).  Chief Rangnow asked Lieutenant Salles about the events that had transpired and determined there was nothing more for him to do at that time.  (Dkt. No. 30-10 at ¶ 6).  Carl Baugh was handcuffed for approximately thirty minutes.[3]  (Dkt. No. 29 at ¶ 4).

## II.     RULE 12(B)(1) MOTION TO DISMISS

The Defendants devote a portion of their Motion to arguing that Melissa Baugh's claims should be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of standing.  (Dkt. No. 29 at ¶¶ 7–9).  The Clerk of Court previously dismissed Melissa Baugh from this action on March 31, 2020 because Melissa Baugh was not listed in the Complaint caption.  *See* (Dkt. No. 1 at 1).  That said, Melissa Baugh is listed as a plaintiff in the body of the Complaint.  (*Id.* at ¶ 6).  The Baughs have not objected to

---

[2]     The Complaint states that it was Officer Klare who assisted Lieutenant Salles.  (Dkt. No. 1 at ¶ 34).  But as stated in his declaration, Officer Klare was off duty and did not respond to the scene on September 28, 2017.  (Dkt. No. 29-6 at ¶ 7).  Officer Arreguin is not a defendant in this lawsuit.  Additionally, the Complaint frequently references "Defendant Obregon."  (Dkt. No. 1 at ¶¶ 56, 66, 79).  Obregon—whoever that may be—is also not named as a defendant in this case.  The Baughs have not explained who Obregon is or what relevance Obregon has to this case.

[3]     The Complaint additionally makes passing references to Carl Baugh sleeping in his vehicle, being arrested for public intoxication, having his vehicle towed, and checking on the condition of a relative.  (Dkt. No. 1 at ¶¶ 56, 66, 72).  It is entirely unclear based on the Complaint what relevance these facts have to this lawsuit.  Further, the facts alleged in the Complaint do not constitute summary judgment evidence.  *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) ("[T]he nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.").

Melissa Baugh's termination from the docket, but because there has been no formal request or ruling on the matter, the Court addresses the Defendants' Rule 12(b)(1) motion to dismiss Melissa Baugh's claims.

It is axiomatic that, to have standing, a "plaintiff must have suffered an injury in fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (quotations omitted).   To claim a violation of her constitutional rights under Section 1983, Melissa Baugh is required "to prove some violation of [her] personal rights." *Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986); *cf. Barker v. Halliburton Co.*, 645 F.3d 297, 300 (5th Cir. 2011) ("A third party may not assert a civil rights claim based on the civil rights violations of another individual.").   The Court finds that Melissa Baugh has not demonstrated a violation of her personal constitutional rights.[4]   *See Coon*, 780 F.2d at 1160–61.

Likewise, Melissa Baugh has not suffered an injury with respect to the state law claims raised in the Complaint. (Dkt. No. 1 at ¶¶ 73–84).  The Baughs have not provided any evidence that Melissa Baugh suffered an injury.  Indeed, it is difficult to determine how Melissa Baugh was involved in the events of this case.  The Complaint's only specific factual mention of Melissa Baugh is that Carl Baugh "had [Melissa] go get the paperwork proving the land was his[.]"  (*Id.* at ¶ 32).

---

[4]    The Complaint begins by alleging that the Defendants infringed the Baughs' right to exclude others from their property.  (Dkt. No. 1 at ¶¶ 1–3).  But the Baughs state no cause of action with respect to this allegation. The Court, therefore, does not decide Melissa Baugh's standing to raise such a claim.

The Court finds that Melissa Baugh has not suffered an injury in fact with respect to the claims raised in the Complaint. *See Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136. Accordingly, the Court grants the Defendants' Rule 12(b)(1) motion to dismiss Melissa Baugh's claims for lack of standing.

## III.   MOTION FOR SUMMARY JUDGMENT

### A.   LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quotations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2253, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must then come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's]

own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (citations omitted). "The nonmovant must identify specific evidence in the record and articulate the precise manner in which that evidence supports his or her claim." *Carr v. Air Line Pilots Ass'n, Int'l,* 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (cleaned up). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citation omitted).

In reviewing a motion for summary judgment, the district court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). This means that factual controversies are to be resolved in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

**B.   DISCUSSION**

**1.   Section 1983 Claims Against the Officers**

Carl Baugh (hereinafter, "Baugh") first raises several claims under 42 U.S.C. § 1983.[5] To prevail under Section 1983, Baugh must show that he has been deprived of a right secured by the Constitution or the laws of the United States by persons acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56

---

[5]    In addition to the claims addressed here, the Complaint makes passing references to the deprivation of Baugh's property rights. (Dkt. No. 1 at ¶¶ 1–3, 42). The Court need not address inadequately developed arguments. *See United States v. Stevens*, 487 F.3d 232, 242 n.1 (5th Cir. 2007).

L.Ed.2d 185 (1978).   Baugh alleges three constitutional violations by the Officers: (1) excessive force; (2) "false arrest and/or false imprisonment"; and (3) malicious prosecution.   (Dkt. No. 1 at ¶¶ 44–57).   Baugh raises these claims against each of the Officers in their individual capacities and against the City on a municipal liability theory. (*Id.* at ¶¶ 8, 10–12, 58–69).   The Court addresses each claim in turn.

> a.   Excessive Force

Baugh claims that the Officers used excessive force against him in violation of the Fourth Amendment at the time of his arrest.   (Dkt. No. 1 at ¶ 44).   The Officers contend there is no genuine issue of material fact as to Baugh's excessive force claim because Baugh's injury was *de minimis* and, even if not, the force used against Baugh was "neither excessive to the need, nor objectively unreasonable under the circumstances."   (Dkt. No. 29 at ¶¶ 19–20).   Additionally, the Officers claim that Baugh's excessive force claim against Chief Rangnow and Sergeant Klare fails because they were not involved in applying force against Baugh.   (*Id.* at ¶¶ 13–14).

To prevail on a Fourth Amendment excessive force claim under Section 1983, a plaintiff must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Buehler v. Dear*, ____ F.4th ____, ____, 2022 WL 619584, at *5 (5th Cir. 2022) (citation quotations omitted).   While a significant injury is not required, the injury must be more than *de minimis*.   *Id.*   Whether the force used was excessive "depends on the facts and circumstances of each particular case," and the reasonableness of the force "must be judged from the perspective of a reasonable officer on the scene, rather than with the

20/20 vision of hindsight." *Craig v. Martin*, 26 F.4th 699, 705 (5th Cir. 2022) (internal quotations omitted).  Courts should consider "the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest[.]"  *Id.* (citations omitted).  Additionally, there is no Section 1983 cause of action "based on the conduct of subordinates," and "[p]ersonal involvement is an essential element of a civil rights cause of action."  *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); *see also Murphy v. Kellar*, 950 F.2d 290, 292 n.7 (5th Cir. 1992) ("It is necessary to specify the personal involvement of each defendant in a cause of action under § 1983.").

Baugh asserts that the Officers fractured his wrist and that he suffered severe nerve damage.  (Dkt. No. 1 at ¶ 36).  But he has supplied no evidence to support this.  The Officers claim that Baugh sustained only a *de minimis* injury and provide three pieces of evidence in support.  (Dkt. No. 29 at ¶ 19).  First, they point to post-arrest photos, which show a gap between Baugh's wrists and the handcuffs—contradicting Baugh's injury claims.  (Dkt. No. 30-4)  Second, they point to the affidavit of Officer Salles, who swears he used "no more than balance displacement and hands on techniques akin to wrestling" to arrest Baugh.  (Dkt. No. 29-5 at ¶ 13).  Last, they point to Baugh's medical records. (Dkt. No. 30-6).  They argue the records reflect chronic carpal tunnel syndrome— not an injury from wearing handcuffs.  (*Id.*).

The Officers further claim that even if Baugh's injury was more than *de minimis*, the force applied was reasonable.  The Officers provide Lieutenant Salles's declaration, in which he describes applying force only after Baugh assaulted him and asserts that he

used the least amount of force possible to restrain Baugh in the face of Baugh's resistance. (Dkt. No. 29-5 at ¶¶ 9–10).  The Officers also provide the expert report of Senior Police Officer David M. Lopez, who states that the Officers "used the least amount of force needed to place Mr. Baugh into custody." (Dkt. No. 30-5 at 8).

Finally, the Officers argue that Chief Rangnow and Sergeant Klare were not personally involved in the events surrounding Baugh's arrest—they were not even present when Baugh was arrested.  (Dkt. No. 29 at ¶¶ 13–14).  In support of their contention that Chief Rangnow and Sergeant Klare were not involved—or even present— at the time of Baugh's arrest, the Officers introduce declarations from both Chief Rangnow and Sergeant Klare stating as much.  (Dkt. No. 30-10 at ¶ 6); (Dkt. No. 29-6 at ¶ 7).  For this reason, the Officers contend, Baugh's excessive force claim against Chief Rangnow and Sergeant Klare fails.

The Court finds that there is no genuine dispute of material fact exists with respect to Baugh's excessive force claim.  *See Celotex*, 477 U.S. at 323, 106 S.Ct. at 2253.  The evidence demonstrates that Baugh's injuries were either *de minimis* or did not result from the use of force.  *See Buehler*, ____ F.4th at ____, 2022 WL 619584, at *5 ("We have tossed out an excessive-force allegation where, for example, the most substantial injury claimed by the arrestee was that she suffered bruising on her wrists and arms because the handcuffs were applied too tightly, reasoning that minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force." (cleaned up)).

And while that evidence alone defeats Baugh's excessive force claim, the evidence further demonstrates that the force Lieutenant Salles used was reasonable.  (Dkt. No. 29-5 at ¶¶ 9–10, 13); (Dkt. No. 30-5 at 8).  Baugh assaulted Lieutenant Salles, and in response, Lieutenant Salles used the least amount of force necessary to restrain Baugh.  Baugh, therefore, has not presented evidence that the force was clearly excessive and unreasonable.  *See Buehler*, ____ F.4th at ____, 2022 WL 619584, at *5.  Though the crime for which the Officers applied force against Baugh was not particularly severe, neither was the force they applied because it was "measured and ascending."  *See id.* at *7–8.  The Court's finding that Lieutenant Salles's force was not excessive is also supported by the fact that Baugh posed a potential threat to the Officers, others, and (by continuing to stand in the path of the mobile home) himself, as well as the fact that he was "actively resisting arrest."  *See Craig*, 26 F.4th at 705.

Finally, Chief Rangnow and Sergeant Klare were not even present at the time of Baugh's arrest.  Without evidence that Chief Rangnow and Sergeant Klare were involved in applying excessive force, Baugh's claim against these Officers fails.  *See Cass v. City of Abilene*, 814 F.3d 721, 728–29 (5th Cir. 2016) (per curiam).

Because the Officers have met their burden by presenting evidence that demonstrates the absence of a genuine issue of material fact, the burden shifts to Baugh to come forward with evidence showing there is a genuine issue for trial.  *See Nola Spice Designs*, 783 F.3d at 536.  Baugh did not file a response or otherwise provide such evidence.  Accordingly, the Court grants summary judgment in favor of the Officers on Baugh's Section 1983 claim for excessive force.

b.    False Arrest and False Imprisonment

Baugh also argues that the Officers violated his Fourth Amendment rights by arresting him without probable cause.  (Dkt. No. 1 at ¶¶ 51–52).  The Officers claim that probable cause supported Baugh's arrest because Baugh unlawfully resisted arrest.  (Dkt. No. 29 at ¶¶ 15–16).

"[T]o state a § 1983 claim for false arrest/false imprisonment, [the plaintiff] must plausibly allege that [the defendant] did not have probable cause to arrest him."  *Arnold v. Williams*, 979 F.3d 262, 269 (5th Cir. 2020) (internal quotations omitted).  In Texas, a "person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer . . . from effecting an arrest . . . by using force against the peace officer[.]"  Tex. Penal Code § 38.03(a).  It is no defense that the arrest was unlawful.  *Id.* § 38.03(b).  "In Texas, the act of resisting can supply probable cause for the arrest itself."  *Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013).

The Officers claim that Baugh unlawfully resisted arrest.  As an additional source of probable cause, they claim that Baugh assaulted Lieutenant Salles.  *See* Tex. Penal Code § 22.01(b)(1).  In support, they provide: (1) Lieutenant Salles's declaration describing how Baugh pushed and struck Lieutenant Salles when he attempted to escort Baugh out of the crew members' way, (Dkt. No. 29-5 at ¶ 9); (2) a video captured by Lieutenant Salles's body cam and another from one of the movers showing Baugh's resistance, (Dkt. No. 30-7); (Dkt. No. 29-4); (3) declarations of the movers describing that they saw "Baugh swing backhanded and hit" Lieutenant Salles and that Baugh continued to "fight the officers" as they attempted to restrain him, (Dkt. No. 29-7 at ¶¶ 12–14); (Dkt. No. 29-8 at ¶¶ 12–

11

14); and (4) the expert report of Senior Police Officer David M. Lopez who describes the assault and resistance based on his review of the video evidence, (Dkt. No. 30-5 at 7).

This evidence demonstrates that there is no genuine issue of material fact on Baugh's "false arrest and/or false imprisonment" claim. The arrest was lawful because it was based on probable cause.[6] *See Buehler*, ____ F.4th at ____, 2022 WL 619584, at *7 ("[T]he great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest for purposes of Texas Penal Code § 38.03(a)[.]" (cleaned up)). The Officers have carried their initial burden. *See Celotex*, 477 U.S. at 323, 106 S.Ct. at 2253. As a result, the burden shifts to Baugh to present evidence that there is a genuine issue for trial. *See Nola Spice Designs*, 783 F.3d at 536. He has not done so. Accordingly, the Court grants summary judgment in favor of the Officers on Baugh's Section 1983 claim for false arrest and false imprisonment.

### c.   Malicious Prosecution

Baugh also "pleads a cause of action for malicious prosecution under § 1983." (Dkt. No. 1 at ¶ 57). The Officers argue that this is not a cognizable claim.[7] (Dkt. No. 29 at ¶ 22). The Officers are correct.

---

[6] As discussed above with respect to the excessive force claim, the fact that Chief Rangnow and Sergeant Klare had no personal involvement in Baugh's arrest also provides an alternative basis for granting summary judgment for them on this claim. *See Thompson*, 709 F.2d at 382.

[7] The Officers also point out that Baugh alleges his Section 1983 malicious prosecution claim based upon the elements of a Texas state law malicious prosecution claim. (Dkt. No. 29 at ¶ 22). Baugh separately raises a state law malicious prosecution claim later in his Complaint. (Dkt. No. 1 at ¶¶ 81–82). The Court addresses Baugh's separate state law malicious prosecution claim below.

The Fifth Circuit does not recognize a "constitutional right to be free from malicious prosecution." *Morgan v. Chapman*, 969 F.3d 238, 246 (5th Cir. 2020). This is because "claims under § 1983 are only 'for violation[s] of rights locatable in constitutional text.'" *Id.* at 245 (quoting *Castellano v. Fragozo*, 352 F.3d 939, 953–54 (5th Cir. 2003) (en banc)). Therefore, actions that "happen to correspond to the tort of malicious prosecution" may "result in an unreasonable search or seizure," in which case "those claims may be asserted under § 1983 as violations of the Fourth Amendment. But that makes them Fourth Amendment claims cognizable under § 1983, not malicious prosecution claims." *Id.* at 245–46.

The Court already addressed Baugh's Fourth Amendment claims under Section 1983. His separate claim under Section 1983 for malicious prosecution is not cognizable. *See id.* Accordingly, the Court grants summary judgment in favor of the Officers.

### d. Qualified Immunity

In addition to the Officers' arguments that their actions did not violate Baugh's constitutional rights, the Officers raise the defense of qualified immunity. (Dkt. No. 29 at ¶¶ 23–26). Qualified immunity protects government officials performing discretionary functions from civil liability for damages as long as their conduct does not violate clearly established constitutional rights. *Buehler*, ____ F.4th at ____, 2022 WL 619584, at *5. To resolve a qualified immunity claim, a court must "decide whether the facts alleged make out a violation of a constitutional right." *Id.* (cleaned up). The court must also decide "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* (cleaned up). "To defeat a claim of qualified-immunity, the plaintiff has

the burden to demonstrate the inapplicability of the defense." *Mayfield v. Currie*, 976 F.3d 482, 486 (5th Cir. 2020) (citations omitted).

The Court has already determined that Baugh failed to satisfy the first step because it concluded that the Officers did not violate Baugh's constitutional rights. But even if that were not the case, summary judgment in the Officers' favor would still be warranted because the Officers' actions—even if they *were* unlawful—did not violate a clearly established right.

"The 'clearly established' prong is difficult to satisfy." *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020). To be clearly established, a right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam) (citation omitted). Courts should not "define clearly established law at a high level of generality." *Id.* at 12, 136 S.Ct. at 308 (citation omitted). The "inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (internal quotations omitted). Rather, courts should "frame the clearly established law question with specificity and granularity." *Brown v. Tarrant County*, 985 F.3d 489, 495 (5th Cir. 2021) (cleaned up). "Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, [such as] excessive force, will apply to the factual situation the officer confronts." *Mullenix*, 577 U.S. at 12, 136 S.Ct. at 308 (cleaned up).

In addition to arguing that qualified immunity is unconstitutional and violates the separation of powers, Baugh asserts that the "constitutional right to be free from unreasonable search and seizure and [his] right to privacy . . . was clearly established at the time of Defendants' actions." (Dkt. No. 1 at ¶¶ 70, 72). This argument is the very definition of characterizing the right at "a high level of generality." *See Mullenix*, 577 U.S. at 12, 136 S.Ct. at 308. Without more, Baugh has failed to meet his burden of demonstrating that the Officers violated a clearly established right. *See Mayfield*, 976 F.3d at 486. Thus, even assuming for the sake of argument that the Officers' actions violated Baugh's constitutional rights, the Officers' qualified immunity defense would still necessitate summary judgment in their favor.

## 2. Section 1983 Municipal Liability

Baugh also brings a Section 1983 claim against the City of Port Lavaca. (Dkt. No. 1 at ¶¶ 58–69). Municipalities are "persons" under Section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). But no municipal liability exists under the doctrine of respondeat superior, so a plaintiff must show that the municipality's policy or custom caused the constitutional violations. *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 752–53 (5th Cir. 2009).

The City correctly cites a threshold ground on which it is entitled to summary judgment for this claim. Where no constitutional violation occurred, the City cannot be liable. *See Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389, 392–93 (5th Cir. 1999) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986) (per curiam)). This is because if "a person has suffered no constitutional injury at the hands

15

of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point." *Heller*, 475 U.S. at 799, 106 S.Ct. at 1573 (emphasis in original). Because the Court has determined that the Officers in this case did not violate Baugh's constitutional rights, summary judgment in favor of the City is proper. *See Buehler*, ____ F.4th at ____, 2022 WL 619584, at *14 ("A policy, practice, or custom claim against a municipality cannot proceed unless the plaintiff has suffered an underlying constitutional violation, and the force used in effectuating [this plaintiff's] arrest did not violate the Constitution." (cleaned up)).

That said, Baugh fails to establish municipal liability even if the Officers' actions did violate his constitutional rights. To state a claim for municipal liability based on the misconduct of an employee, the plaintiff must allege facts showing "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (citations omitted).

With respect to the first element—official policy—Baugh appears to advance three theories: (a) an informal custom or practice; (b) inadequate training and supervision; and (c) ratification of the Officers' allegedly unlawful conduct. (Dkt. No. 1 at ¶¶ 58–69). Baugh's first and second theories fail for the same reason. In raising his municipal liability claim, Baugh does not identify any instance of unlawful conduct by the City except for the events in this case. This is insufficient when raising a municipal liability claim based on an informal custom or practice. *See Ratliff v. Aransas County*, 948 F.3d 281, 285 (5th Cir. 2020) ("To plead a practice so persistent and widespread as to practically

have the force of law, [the plaintiff] must do more than describe the incident that gave rise to his injury." (cleaned up)).  It is also generally insufficient when raising a municipal liability claim based on inadequate training or supervision.[8]  *See Sanders-Burns v. City of Plano*, 594 F.3d 366, 382 (5th Cir. 2010) ("Claims of inadequate training generally require that the plaintiff demonstrate a pattern.").

Baugh's third theory—ratification of the Officers' allegedly unlawful conduct—does not require specific allegations beyond a single incident.  Under this theory, Baugh alleges that the City's policymakers "had the opportunity to review the unlawful conduct of Defendants, and upon review, determined that the Defendants acted in conformance to its official policies or otherwise ratified their conduct."  (Dkt. No. 1 at ¶ 66).

"If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."  *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017) (internal quotations omitted).  But ratification "is limited to extreme factual situations."  *Id.* (citations omitted).

---

[8]     The Supreme Court "left open the possibility that, in a narrow range of circumstances, a pattern of similar violations might not be necessary to show" the deliberate indifference necessary to successfully bring a failure-to-train claim. *Connick v. Thompson*, 563 U.S. 51, 63, 131 S.Ct. 1350, 1361, 179 L.Ed.2d 417 (2011) (internal quotations omitted).  The Supreme Court "posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Id.* Since police frequently attempt to arrest fleeing felons and the likelihood that an officer lacking specific tools to handle such a situation will violate constitutional rights, the Supreme Court theorized that a city's decision not to train the officers about the constitutional limits of the use of deadly force could reflect the city's deliberate indifference to such a highly predictable consequence. *Id.* at 63–64.  Nevertheless, there are no facts in this case suggesting that the City failed to offer relevant training at all to its officers or that the City ignored a highly predictable consequence.  Thus, the events of this case do not rise to the level of the Supreme Court's hypothetical such that it would invoke the "single-incident" liability for a failure-to-train municipal liability claim on which the Supreme Court opined.

Obvious violations of clearly established law can rise to this level, *Young v. Bd. of Supervisors of Humphreys Cnty.*, 927 F.3d 898, 903 (5th Cir. 2019), but as already discussed above in the qualified immunity section, the Officers' actions did not violate clearly established law.  Nor were the Officers' actions otherwise so "extreme" as to provide the basis for a ratification theory of municipal liability.  *Compare Grandstaff v. City of Borger*, 767 F.2d 161, 168, 171 (5th Cir. 1985) (finding ratification when officers "poured" gunfire onto a truck and killed an innocent rancher) *with Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1988) (refusing to find ratification when an officer shot a fleeing suspect in the back); *accord Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009).

Because Baugh has not demonstrated an official policy by the City under any of his three theories, the Court does not determine whether the official policy was promulgated by the municipal policymaker or if the official policy was the moving force behind the constitutional violation.  *See Peña*, 879 F.3d at 621.  Accordingly, the Court grants summary judgment in favor of the City on Baugh's Section 1983 municipal liability claim.

### 3.    <u>Texas State Law Claims</u>

Finally, Baugh alleges state law claims for false arrest and false imprisonment, intentional infliction of emotional distress, assault and battery, malicious prosecution, and abuse of official capacity.  (Dkt. No. 1 at 73–84).  In response, the Officers principally rely on official immunity under Texas law.  (Dkt. No. 29 at ¶ 42).  The City relies on sovereign immunity.  (*Id.* at ¶ 43).  The Court agrees with the Defendants.

At the outset, the Court dismisses Baugh's claim for abuse of official capacity because no such claim exists. "Abuse of Official Capacity" is codified as a state crime under Section 39.02 of the Texas Penal Code, and "Official Oppression" is codified as a state crime under Section 39.03 of the Texas Penal Code. But the Texas Penal Code does not create private causes of action. *Spurlock v. Johnson*, 94 S.W.3d 655, 658 (Tex. App.—San Antonio 2002, no pet.).

Baugh's false arrest and false imprisonment, intentional infliction of emotional distress, and assault and battery claims are all raised against the Officers alone, and his malicious prosecution claim is raised against all the Defendants. (Dkt. No. 1 at ¶¶ 73–82). As the Officers point out, they are entitled to official immunity. *See* (Dkt. No. 29 at ¶ 42). Under Texas law, government officials are entitled to immunity from suit "for matters arising from the performance of their discretionary duties, as long as they are acting in good faith and within the scope of their authority." *Wren v. Towe*, 130 F.3d 1154, 1160 (5th Cir. 1997) (per curiam) (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994)). "The 'good faith' test applied by Texas law in determining official immunity is evaluated under substantially the same standard used for qualified immunity determinations in § 1983 actions." *Meadours v. Ermel*, 483 F.3d 417, 424 (5th Cir. 2007). As stated above, the Court finds that the Officers' actions were reasonable, and their actions

were within the scope of their authority.[9]   Accordingly, the Court grants summary judgment in favor of the Officers on Baugh's state law claims.  *See Wren*, 130 F.3d at 1160.

That leaves only Baugh's malicious prosecution claim against the City.  Suits under the Texas Tort Claims Act in federal court can only be brought against a government entity if it has expressly waived sovereign immunity.  *Sherwinski v. Peterson*, 98 F.3d 849, 851–52 (5th Cir. 1996).   The Texas Tort Claims Act expressly *retains* immunity for intentional torts.  Tex. Civ. Prac. & Rem. Code § 101.057(2).  Malicious prosecution is an intentional tort in Texas.  *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex. App.—Houston [1st Dist.] 1995, no writ); *accord Humphrey's v. City of Ganado*, 467 F. App'x 252, 256–57 (5th Cir. 2012) (per curiam).  Thus, the Court finds that the City has not waived sovereign immunity for this claim.  Accordingly, the Court grants summary judgment in favor of the City.

## IV.    CONCLUSION

The Court grants the Defendants' Motion.  Specifically, the Court **GRANTS** the Defendants' Rule 12(b)(1) motion to dismiss claims by Plaintiff Melissa Baugh for lack of standing.  (Dkt. No. 29).  The Court also **GRANTS** the Defendants' Motion for Summary Judgment.  (*Id.*).   The Court **DISMISSES WITHOUT PREJUDICE** Plaintiff Melissa Baugh's claims under Rule 12(b)(1) and Plaintiff Carl Baugh's state law malicious

---

[9]    Additionally, because Baugh's claim of malicious prosecution is raised against all the Defendants, including the City, (Dkt. No. 1 at ¶ 82), this claim is also barred as to the Officers under the Texas Tort Claims Act because it is raised against both a governmental unit *and* its employees.  Tex. Civ. Prac. & Rem. Code § 101.106(e).  Baugh's malicious prosecution claim against the City is addressed below.

prosecution claim against the City of Port Lavaca.[10]   The Court **DISMISSES WITH PREJUDICE** Plaintiff Carl Baugh's remaining claims.

It is SO ORDERED.

Signed on March 30, 2022.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**

---

[10]   Claims that are dismissed for lack of subject matter jurisdiction are dismissed without prejudice.  *See Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020).  Lack of Article III standing deprives a federal court of subject matter jurisdiction.  *See Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 627 (5th Cir. 2021) ("Standing is a component of subject matter jurisdiction." (citation omitted)).  Similarly, claims implicating the Eleventh Amendment are dismissed without prejudice because the Eleventh Amendment deprives the Court of subject matter jurisdiction. *See Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 450 (5th Cir. 2022) (observing that "the Eleventh Amendment generally deprives federal courts of jurisdiction" over certain suits); *United States v. Texas Tech Univ.*, 171 F.3d 279, 285 n.9 (5th Cir. 1999) ("While the Supreme Court has left this question open, [the Fifth Circuit] has repeatedly referred to the Eleventh Amendment's restriction in terms of subject matter jurisdiction.").